IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
EASTERN DIVISION OF ILLINOIS

| | |
|---|---|
| Derrick Myles,<br><br>      Plaintiff,<br><br>vs.<br><br>Robert X. Reighter, Pedro A. Dominguez, Charles F. Best, Lt. Martin, Anthony M. Lelli, Sgt. Phillips, Sgt. Johnson, Dr. Jane Doe, John Doe #1, John Doe #2, John Doe #3, John Doe #4, John Doe #5, Jane Doe #1, Jane Doe #2,<br><br>      Defendants. | Case No. 1-15-civ-09635<br><br>Judge Ruben Castillo<br><br>Magistrate Judge Young B. Kim |

# FIRST AMENDED COMPLAINT

## INTRODUCTION

Plaintiff Derrick Myles, by and through his attorneys, brings this action for relief under the Civil Rights Act, 42 U.S.C. § 1983, because prison officials failed to take reasonable measures to protect Plaintiff, an inmate, from a physical assault by other inmates after Plaintiff warned prison officials of threats to his safety. Plaintiff also seeks relief because Defendants provided improper and inadequate medical treatment to him, and failed to treat his serious medical needs after he was attacked, as a result of which Plaintiff had to undergo surgery for a serious medical condition.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 to redress Defendants' unlawful deprivation of Plaintiff's rights, which are secured, guaranteed and protected by the Constitution and federal law.

2. Plaintiff brings this action for compensatory relief pursuant to 42 U.S.C. § 1983 in order to remedy Defendants' violations of his rights.

3. Venue is proper in this District under 28 U.S.C. § 1391 because all of Defendants' acts that violated Plaintiff's rights occurred in this District.

4. Plaintiff filed an emergency grievance with prison officials. However, the Warden at Stateville Correctional Center ("Stateville") (where Plaintiff was an inmate) sent the grievance back to Plaintiff, stating that Plaintiff's personal safety and serious medical needs were not emergencies. The Warden further directed Plaintiff to re-file his grievance with his counselor. Plaintiff then mailed his grievance to his counselor in accordance with prison procedure, but Plaintiff's counselor never responded. Plaintiff subsequently asked prison officials to answer the grievance, but none of them did so. Because Plaintiff exhausted the prison's administrative remedies by pursuing proper inmate grievance procedures and because officials refused to address Plaintiff's grievance, Plaintiff complied with the Prison Litigation Reform Act.

5. All of the Defendants worked for the Illinois Department of Corrections ("IDOC") and/or for employers that have contracts with IDOC, and therefore all of the Defendants acted under "color of state law" at all relevant times.

**PARTIES**

6. Plaintiff, Derrick Myles, is currently incarcerated at Cook County Jail, located at 2700 S. California Avenue, Chicago, IL 60608 ("Jail"). Plaintiff was incarcerated at the Northern Reception and Classification Center ("NRC"), which is part of Stateville, from September 10, 2014 until December 3, 2014. Plaintiff was attacked on September 10, 2014.

-3-

7. All of the Defendants worked at Stateville between September 10, 2014 and September 16, 2014. Stateville is a prison operated under the control and authority of IDOC. Stateville is located at 16830 IL-53, Crest Hill, IL 60403.

8. Correctional Officer Robert X. Reighter ("Reighter") worked at Stateville on the 3:00 p.m. to 11:00 p.m. shift on September 10, 2014.

9. Correctional Officer Pedro A. Dominguez ("Dominguez") worked at Stateville on the 11:00 a.m. to 7:00 p.m. shift on September 11, 2014.

10. Defendants Charles F. Best ("Best") and Anthony M. Lelli ("Lelli") worked at Stateville on September 15, 2014. Both of them were assigned to the prison's Adjustment Committee on that date.

11. Lieutenant Martin ("Martin") worked at Stateville on the 3:00 p.m. to 11:00 p.m. shift on September 10, 2014. Martin's first name is unknown to Plaintiff at this time. Martin is a middle-aged African-American male who is approximately six feet tall.

12. Sergeant Phillips ("Phillips") worked at Stateville on the 3:00 p.m. to 11:00 p.m. shift on September 10, 2014. Phillips' first name is unknown to Plaintiff at this time. Phillips is a middle-aged Caucasian male who is approximately six feet tall.

13. Sergeant Johnson ("Johnson") worked at Stateville on the 7:00 a.m. to 3:00 p.m. shift on September 15, 2014. Johnson's first name is unknown to Plaintiff at this time. Johnson is an African-American male between 35-45 years of age. Johnson was assigned to the prison's Health Care Unit on September 15, 2014.

14. Dr. Jane Doe ("Dr. Jane Doe") worked at Stateville on the 7:00 a.m. to 3:00 p.m. shift on September 11, 2014. She is a middle-aged Caucasian female with sandy-blond hair.

15. Lieutenant John Doe ("John Doe #1") worked at Stateville on the 11:00 p.m. to 7:00 a.m. shift on September 10, 2014 and September 11, 2014. Plaintiff believes that one of John Doe #1's names is either William or Williams. John Doe #1 is a middle-aged African-American male who is approximately 5'11 and weighs about 225 lbs. John Doe #1 wore a hat and a gold chain with a medallion on the above-noted dates.

16. Defendants Jane Doe #1 ("Jane Doe #1") and Jane Doe #2 ("Jane Doe #2")—as distinguished from Dr. Jane Doe (who is a different person than Jane Doe #1 and Jane Doe #2)—worked in the medical facility at Stateville during the 7:00 a.m. to 3:00 p.m. shift on September 10, 2014. Plaintiff does not know the names of either of these employees, but both worked as medical staff at the prison (i.e., they were certified medical technicians, nurses, or physician assistants). These Defendants placed stitches in Plaintiff's hand on September 10, 2014. Both of these Defendants are middle-aged African-American females. One of them wore glasses and the other did not.

17. Defendants John Doe #2 ("John Doe #2"), John Doe #3 ("John Doe #3"), John Doe #4 ("John Doe #4") and John Doe #5 ("John Doe #5") all worked at Stateville during the 3:00 p.m. to 11:00 p.m. shift on September 10, 2014. The identities of John Doe #2, John Doe #3, John Doe #4 and John Doe #5 are unknown to Plaintiff at this time. All of these Defendants are correctional officers, and all of them were present when Plaintiff was attacked on September 10, 2014. Before Plaintiff was attacked, he informed all of them and Defendant Reighter about the threats to his safety.

720011792 12346270

-5-

**CHRONOLOGICAL STATEMENT OF EVENTS**

18. On September 10, 2014, Plaintiff was transferred to NRC from Lawrence Correctional Center.

19. Plaintiff arrived at NRC at about 3:30 p.m. on September 10, 2014. Soon thereafter, Plaintiff was accosted by several inmates who asked Plaintiff what his name was and why he was going to court. One of these inmates said that Plaintiff was involved in an incident in which police imprisoned a relative of that inmate.

20. Another inmate stated that Plaintiff was involved in another incident where a person close to that inmate had been shot. Plaintiff stated repeatedly that he did not want any trouble, but the inmates threatened to kill Plaintiff as soon as the prison guards were not watching.

21. One of the inmates who threatened Plaintiff appeared to have a sharp object that could be used as a weapon. Plaintiff immediately reported the threats to Defendants Reighter, Martin, Phillips, John Doe #2, John Doe #3, John Doe #4 and John Doe #5, all of whom were nearby.

22. Defendants Reighter, Martin, Phillips, John Doe #2, John Doe #3, John Doe #4 and John Doe #5 told Plaintiff not to worry about inmates trying to harm him, because they would be disciplined if they harmed him.

23. Defendants Reighter, Martin, Phillips, John Doe #2, John Doe #3, John Doe #4 and John Doe #5 did not assist Plaintiff, protect him or relocate him to a safe area.

720011792 12346270

-6-

24. Instead, Defendants Reighter, Martin, Phillips, John Doe #2, John Doe #3, John Doe #4 and John Doe #5 insisted that Plaintiff stay in the unsupervised holding cage with the inmates who had threatened to physically harm Plaintiff.

25. As soon as the guards left, about thirty to forty inmates began calling Plaintiff a "stool pigeon5" and other derogatory terms.

26. Approximately ten of the inmates attacked Plaintiff. Plaintiff shouted loudly and repeatedly for help.

27. Defendants Reighter, Martin, Phillips, John Doe #2, John Doe #3, John Doe #4 and John Doe #5 did not do anything to help or protect Plaintiff. Several inmates tried to intervene on Plaintiff's behalf, but the attackers turned on them as well.

28. After Plaintiff had been attacked for several minutes, Defendants Reighter, Martin, Phillips, John Doe #2, John Doe #3, John Doe #4 and John Doe #5 returned to the cage where Plaintiff was being attacked and issued a disciplinary report to Plaintiff.

29. Defendants Reighter, Martin, Phillips, John Doe #2, John Doe #3, John Doe #4 and John Doe #5 then separated Plaintiff from the attackers and took him to another holding room.

30. Because these Defendants did not assist Plaintiff or relocate Plaintiff to a safe area, Plaintiff suffered serious injuries.

720011792 12346270

31. Defendants Reighter, Martin, Phillips, John Doe #2, John Doe #3, John Doe #4 and John Doe #5 left Plaintiff in the second holding room for more than an hour without arranging or providing any medical treatment for Plaintiff.

32. Plaintiff repeatedly begged Defendants Reighter, Martin, Phillips, John Doe #2, John Doe #3, John Doe #4 and John Doe #5 to provide medical treatment because Plaintiff's left arm was in extreme pain, and he could not move his wrist or hand. Plaintiff was bleeding visibly throughout that period.

33. Defendant Martin finally told Phillips to take Plaintiff to the prison Health Care Unit ("HCU") because Martin was "tired of hearing [plaintiff] whine all day." Defendants Phillips and Reighter commented that "a little bleeding from [plaintiff's] hand [wasn't] going to kill [him.]" Defendant Phillips then took Plaintiff to the HCU. At the HCU, Defendants Phillips told Defendants Jane Doe #1 and Jane Doe #2 that Plaintiff had misbehaved, and therefore the prison radio had announced a violent altercation.

34. Defendants Jane Doe #1 and Jane Doe #2 stitched Plaintiff's hand. These Defendants did not examine Plaintiff's arm and did not give Plaintiff any medicine. Jane Doe #1 and Jane Doe #2 treated Plaintiff with roughness, contempt and hostility.

35. At about 11:15 p.m. that night (September 10, 2014), Plaintiff experienced extreme pain in his hand, wrist and arm, which had become very swollen. Plaintiff told this to Defendants Dominguez and John Doe #1, but they replied that they had other things to do. They did not allow Plaintiff to see any medical personnel.

-7-

-8-

36. At about midnight, Plaintiff told Defendants Dominguez and John Doe #1 again that he needed to see medical personnel because of the injuries to his arm, wrist and hand. They told Plaintiff to stop complaining and to stop pushing the medical emergency button inside his cell. Defendant Dominguez further stated that if Plaintiff wanted medical treatment, Plaintiff "should not have come to prison" and "should definitely not have been fighting." Defendants Dominguez and John Doe #1 then walked away from Plaintiff's cell.

37. For the next hour or so, Plaintiff repeatedly pushed the medical emergency button inside his cell and called out for medical intervention. Defendants Dominguez and John Doe #1 refused to allow Plaintiff to receive medical treatment, even though his arm had become numb, he was in extreme pain and he was bleeding.

38. Because Defendants Dominguez and John Doe #1 refused to allow Plaintiff to see medical personnel, at approximately 12:20 a.m. on September 11, 2014, Plaintiff broke the sprinkler in his cell to activate the prison's alarm system as a means of getting guards to come to Plaintiff's cell so that he could get medical care.

39. Although the prison's alarm system began ringing immediately after Plaintiff broke the sprinkler in order to get medical attention, Defendants Dominguez and John Doe #1 refused to come to Plaintiff's cell.

40. Water ran into Plaintiff's cell for approximately three hours, despite his continuous calls for help.

41. Around 3:00 a.m., Defendants Dominguez and John Doe #1 finally took Plaintiff out of the cell, and asked why Plaintiff broke the sprinkler. Plaintiff explained again that he was

in dire need of medical care because he had lost feeling in his left arm, hand and wrist, and could not move them.

42. Defendant Dominguez then stated that "popping sprinklers to make the alarm system go off is not the way to get medical treatment." Plaintiff replied that he had been asking for medical assistance all night and that he had repeatedly pushed the medical emergency button in his cell, but no one had addressed his medical concerns.

43. Defendant Dominguez then issued Plaintiff a disciplinary report for breaking the sprinkler.

44. The Stateville disciplinary board (the "Adjustment Committee") later ordered Plaintiff to pay $643.00 in restitution for breaking the sprinkler. Plaintiff also received disciplinary confinement for breaking the sprinkler.

45. At the Adjustment Committee meeting on September 15, 2014, Plaintiff pled guilty to breaking the sprinkler. Plaintiff's reason for breaking the sprinkler (to get medical assistance) was not documented by prison officials.

46. Around 9:30 a.m. or 10 a.m. on September 11, 2014, Plaintiff was taken to Dr. Jane Doe. She examined Plaintiff's left arm, wrist and hand. She asked who stitched Plaintiff's hand, and Plaintiff told her that he did not know their names. Plaintiff told her that Defendants Jane Doe #1 and Jane Doe #2 had treated him roughly, and with contempt and hostility.

47. Dr. Jane Doe saw the blood and swelling on Plaintiff's arm, hand and wrist. Dr. Jane Doe cleaned the blood and gave Plaintiff two aspirin before sending him back to his cell.

720011792 12346270

48. On September 12, 2014, September 13, 2014 and September 14, 2014, Plaintiff had bleeding, extreme swelling, loss of feeling and pain in his arm, wrist and hand. The stitches were no longer visible. Plaintiff sought medical help again, but he was not allowed to see any medical personnel.

49. On the night of September 14, 2014 and early September 15, 2014, Plaintiff's arm emitted a foul-smelling greenish-yellow discharge and had become greatly swollen. Plaintiff reported his medical situation to prison officials during the 11:00 p.m. to 7:00 a.m. shift on September 14, 2014, but no one allowed him to see medical personnel. On the next shift (7:00 a.m. to 3:00 p.m. on September 15, 2014), Plaintiff told Correctional Officer Sanders ("Sanders") and Correctional Officer Gee ("Gee"), neither of whom is a Defendant in this case, about his condition.

50. Sanders and Gee tried to get Plaintiff medical treatment around 7:20 a.m. on September 15, 2014, but Defendants Best and Lelli stated that Plaintiff was not to receive medical treatment until after Best and Lelli heard Plaintiff's disciplinary reports for "fighting and breaking the sprinkler." Plaintiff was compelled to wait for medical attention until Best and Lelli heard the disciplinary reports later that day.

51. At approximately 12:35 p.m. on September 15, 2014 (more than five hours after Sanders and Gee told officials that medical personnel needed to look at Plaintiff's injuries), Plaintiff was sent to the prison HCU.

52. When Plaintiff got to the HCU, a doctor (who appeared to be of Middle-Eastern descent) stated that it appeared Plaintiff had an infection caused by the attack that had occurred on September 10, 2014. This doctor asked if Plaintiff had taken antibiotics after he was attacked

-10-

on September 10, 2014. Plaintiff replied that Jane Doe #1 and Jane Doe #2 had not given him any medicine and that Dr. Jane Doe had only given him two aspirin.

53. The first doctor called another doctor and the HCU medical director to examine Plaintiff. All three doctors concluded that Plaintiff required emergency surgery.

54. Around 1:15 p.m., these medical personnel told Defendant Johnson that Plaintiff needed to go to an outside hospital for emergency surgery. Defendant Johnson then took Plaintiff away from these doctors, handcuffed him on the hand where the infection was located and placed Plaintiff back in his cell.

55. The next day, September 16, 2014, prison guards took Plaintiff to an outside hospital where numerous medical personnel examined him and conducted various tests.

56. The medical specialists at the hospital concluded that Plaintiff had a severe infection in his left arm, wrist and hand.

57. Plaintiff underwent surgery, and the doctors told him that he could have lost his arm, or even his life.

58. Although the surgery saved Plaintiff's arm, wrist and hand, that arm, wrist and hand have continuing medical problems.

59. The actions of Defendants Reighter, Martin, Phillips, John Doe #2, John Doe #3, John Doe #4 and John Doe #5, and/or their failure to act, caused Plaintiff to be attacked and seriously injured. Moreover, because of reckless indifference, Defendants Reighter, Martin, Phillips, John Doe #2, John Doe #3, John Doe #4 and John Doe #5 failed to protect Plaintiff after

-11-

-12-

Plaintiff informed them of the threats to his safety. Defendants Best, Lelli, Johnson, Dominguez, John Doe #1, Jane Doe #1 and Jane Doe #2 were also recklessly indifferent to Plaintiff's serious medical needs by failing to provide proper medical treatment and by ignoring Plaintiff's requests for medical attention, despite his clear and repeated requests for medical help.

## COUNT I

### FAILURE TO PROTECT – DELIBERATE INDIFFERENCE

**(Against Defendants Reighter, Martin, Phillips, John Doe # 2, John Doe #3, John Doe #4 and John Doe #5)**

60. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 59 of this Complaint with the same force and effect as if fully set forth herein.

61. On September 10, 2014, a group of other inmates threatened to attack Plaintiff.

62. Plaintiff immediately reported that threat to his safety to Defendants.

63. Defendants thus knew of such threats and were deliberately indifferent by not taking any actions to segregate Plaintiff or otherwise protect him from the other inmates who had threatened to, and did, attack Plaintiff.

64. As a direct and legal result of Defendants' deliberate indifference and failure to protect Plaintiff, the other inmates did carry out their threats. These other inmates brutally assaulted Plaintiff on September 10, 2014, and Plaintiff has suffered damages, including without limitation, injuries to his hand and arm, pain and suffering and continuing and persistent medical problems with his hand.

65. In violation of Plaintiff's rights under the Eighth and Fourteenth Amendments, Defendants' actions and omissions of Defendants were done in conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying an award of punitive and compensatory damages in an amount to be determined at trial.

66. Wherefore, Plaintiff prays for relief as set forth below.

## COUNT II

### DENIAL OF MEDICAL CARE – DELIBERATE INDIFFERENCE

### (Against Defendants Dr. Jane Doe, Jane Doe #1 and Jane Doe #2)

67. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 66 of this Complaint with the same force and effect as if fully set forth herein.

68. After Plaintiff sustained serious injuries from the assault on September 10, 2014, Plaintiff was taken to see Defendants Jane Doe #1 and Jane Doe # 2 for medical treatment.

69. Defendants Jane Doe #1 and Jane Doe #2 did not examine Plaintiff's arm and did not give Plaintiff any medicine. Moreover, Defendants Jane Doe #1 and Jane Doe #2 treated Plaintiff with roughness, contempt and hostility.

70. Defendant Dr. Jane Doe only gave Plaintiff two aspirin and did not provide him with any antibiotics.

71. Defendants' actions violated Plaintiff's rights under the Eighth and Fourteenth Amendments, and Defendants were deliberately indifferent to Plaintiff's serious medical needs by not properly treating his injuries.

72. On September 15, 2014, Plaintiff underwent surgery for treatment of the injuries to his hand and arm. That surgery was necessitated by the improper medical care that Defendants provided to Plaintiff.

73. Defendants are liable for Plaintiff's injuries because they deliberately failed to give Plaintiff proper medical care when they had the opportunity to do so.

74. As a direct and legal result of Defendants' acts and omissions, Plaintiff has suffered damages, including without limitation pain and suffering during the time that he was denied access to medical care and continuing and persistent medical problems with his arm, wrist and hand.

75. In violation of Plaintiff's rights under the Eighth and Fourteenth Amendments, Defendants' actions and omissions were done in conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying an award of punitive and compensatory damages in an amount to be determined at trial.

76. Wherefore, Plaintiff prays for relief as set forth below.

## COUNT III

### DENIAL OF MEDICAL CARE – DELIBERATE INDIFFERENCE

**(Against Defendants Dominguez, Best, Lelli, Johnson and John Doe #1)**

77. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 76 of this Complaint with the same force and effect as if fully set forth herein.

720011792 12346270

-15-

78. After Plaintiff sustained serious injuries from the assault on September 10, 2014, Plaintiff made repeated requests for medical attention. Defendants were aware of—yet disregarded—Plaintiff's obvious injuries, pain and suffering and need for medical attention.

79. Defendants were deliberately indifferent to Plaintiff's serious medical needs by ignoring or denying Plaintiff's repeated requests to see a doctor to examine his arm, wrist and hand, and to provide medication.

80. As a direct and legal result of their conduct, Defendants are liable for Plaintiff's injuries because they deliberately failed to intervene when they had the opportunity and authority to do so to prevent further bodily harm. Plaintiff has suffered damages, including without limitation pain and suffering during the time that he was denied access to medical care and continuing and persistent medical problems with his arm, wrist and hand.

81. In violation of Plaintiff's rights under the Eighth and Fourteenth Amendments, the actions and omissions of Defendants were done in conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying an award of punitive and compensatory damages in an amount to be determined at trial.

82. Wherefore, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Derrick Myles respectfully requests that this Court enter a judgment in his favor and against Defendants (in their individual capacity) as follows:

A.  Compensatory, general and special damages in an amount to be proved at trial;

B.  Punitive damages against individual Defendants;

C.  Reasonable costs of suit (including expert fees and attorneys' fees); and

D.  Such other relief as this Court deems just, proper and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial as to all claims for damages pursuant to the Seventh Amendment of the Constitution of the United States.

Respectfully submitted,

MAYER BROWN LLP
Attorneys for Plaintiff Derrick R. Myles

By: /s/ Lee N. Abrams
Lee N. Abrams
Marc Kadish
Benjamin A. Shoemaker
Mayer Brown LLP
71 S. Wacker Drive
Chicago, Illinois 60606
312/701-0600
labrams@mayerbrown.com
mkadish@mayerbrown.com
bshoemaker@mayerbrown.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on April 25, 2016, a true and correct copy of the foregoing was mailed to:

Lisa Madigan
500 S. Second St.
Springfield, IL 62706

The undersigned, an attorney, also hereby certifies that on April 25, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court through ECF, which provides service on registered ECF users, including:

Illinois Department of Corrections
James R. Thompson Center
100 West Randolph
Chicago, IL 60601

By: /s/ Benjamin A. Shoemaker

720011792 12346270