UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERRICK MYLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 9635 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| ROBERT X. REIGHTER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Derrick Myles filed suit against Robert X. Reighter, Pedro A. Dominguez, Charles F. Best, Sgt. Johnson (first name unknown), Lt. Phillip Martin, Dr. Jane Doe, John Does #1-5, and Jane Does #1-2 (collectively, "Defendants"), alleging deprivations of his constitutional rights under 42 U.S.C. § 1983. (R. 18, Am. Compl.) The Court entered a default against Defendants for failure to timely appear, answer, or otherwise plead in response to Plaintiff's amended complaint. (R. 20, Min. Entry at 1.) Plaintiff now moves for default judgment, whereas Defendants move to vacate the entry of default. (R. 30, Pl.'s Mot. at 1; R. 44, Defs.' Mot. at 1.) For the reasons stated below, Defendants' motion to vacate is granted, and Plaintiff's motion for default judgment is denied.

## BACKGROUND

Between September and December 2014, Plaintiff was incarcerated at the Northern Reception and Classification Center ("NRC"), which is part of the Stateville Correctional Center ("Stateville"). (R. 18, Am. Compl. ¶ 6.) During that same period, Defendants were employed by the Illinois Department of Corrections ("IDOC") and assigned to Stateville. (*Id.* ¶¶ 5-17.) Plaintiff alleges that upon his arrival at NRC on September 10, 2014, he was "accosted by

several inmates who asked Plaintiff what his name was and why he was going to court." (*Id.* ¶ 19.) Another inmate allegedly accused Plaintiff of being involved in an incident wherein a friend of his had been shot. (*Id.* ¶ 20.) The other inmates then allegedly threatened to kill Plaintiff as soon as the prison guards left. (*Id.*) Plaintiff claims that he told several officers about the threats, but they ignored him. (*Id.* ¶¶ 20-22.) He claims that as soon as the officers left the area, the other inmates attacked him, injuring his arm, wrist, and hand. (*Id.* ¶¶ 25-28.) He claims that these same officers then delayed getting him necessary medical treatment for over an hour, and that they wrongfully issued him a disciplinary report for fighting with the other inmates. (*Id.* ¶¶ 29-32.) Plaintiff was ultimately taken to Stateville's Health Care Unit ("HCU"), where medical personnel stitched an injury to his hand but allegedly failed to examine the rest of his arm or give him any medication. (*Id.* ¶¶ 33-34.)

At approximately 11:15 p.m. that night, Plaintiff allegedly notified two more officers that he was experiencing extreme pain, numbness, and bleeding but they ignored him. (*Id.* ¶ 35.) Plaintiff then broke the sprinkler alarm system in his cell to draw attention to his need for medical care. (*Id.* ¶ 38.) Plaintiff claims that water ran into his cell for approximately three hours before the officers responded. (*Id.* ¶ 40.) Plaintiff was given another disciplinary report for damaging the sprinkler. (*Id.* ¶ 44.)

The following morning, Plaintiff was taken to the HCU and was seen by a doctor, who allegedly cleaned the blood from his hand and gave him two aspirin. (*Id.* ¶ 47.) For the next three days, he claims to have suffered pain, loss of feeling, swelling, and a "foul-smelling greenish-yellow discharge" coming from his arm. (*Id.* ¶¶ 48-49.) Plaintiff claims that he reported all of this to various officers but they continued to ignore him. (*Id.* ¶ 49.)

On September 15, 2014, Plaintiff claims that he was taken to HCU again and that doctors determined he needed emergency surgery. (*Id.* ¶¶ 53-54.) He claims that despite knowing this, one of the prison guards handcuffed his infected hand and placed him back in his cell. (*Id.* ¶ 54.) The following day, Plaintiff was taken to an outside hospital, where medical specialists concluded that Plaintiff had a "severe infection" in his left arm and subsequently performed surgery. (*Id.* ¶¶ 55-57.) Plaintiff claims that although the surgery "saved" his arm, he continues to have problems with his arm, wrist, and hand as a result of the lack of prompt treatment. (*Id.* ¶ 58.) He sues numerous officers involved in these events, as well as the prison doctor and other medical personnel who treated him at HCU. (*Id.* ¶¶ 8-17.)

## PROCEDURAL HISTORY

In October 2015, Plaintiff filed a *pro se* complaint. (R. 1, Compl.) The Court subsequently granted Plaintiff's motion for counsel and recruited *pro bono* counsel to represent him. (R. 4, Mot.; R. 9, Order.) In April 2016, Plaintiff filed an amended complaint, through counsel, alleging constitutional violations under 42 U.S.C. § 1983 against both named and unnamed Defendants. (R. 18, Am. Compl.) Specifically, Plaintiff claims that Defendants failed to protect him from the other inmates and ignored his requests for medical care. (*Id.* ¶¶ 60-81.)

On June 7, 2016, Plaintiff's counsel appeared for a status hearing and advised the Court that Defendants had failed to timely appear, answer, or otherwise respond to the amended complaint. (R. 20, Min. Entry.) A default was entered against all Defendants on that date. (*Id.*) Plaintiff took no further action for more than a year, until October 3, 2017, when he moved for default judgment seeking compensatory and punitive damages against all 13 Defendants. (R. 30, Pl.'s Mot.) On October 16, 2017, the Illinois Attorney General, acting as a non-party, filed a response to Plaintiff's motion for default judgment arguing that none of the Defendants were

3

ever properly served. (R. 35, Ill. Att'y Gen.'s Resp.) In November 2017, Defendants Best and Martin, represented by the Illinois Attorney General, filed a motion to vacate the default entered by the Court. (R. 44, Defs.' Mot.) Both attest that they did not have any knowledge of this case until October 2017. (R. 44-1, Martin Decl.; *id.*, Best Decl.) Plaintiff objects to Defendants' motion to vacate the default and argues that judgment should be entered against all Defendants. (R. 42, Pl.'s Reply; R. 48, Pl.'s Resp.)

## LEGAL STANDARD

Default judgment occurs through a two-step process: (1) entry of default; and (2) entry of a default judgment. *See* FED. R. CIV. P. 55(a), (b). Upon entry of default, "the well-pleaded allegations of a complaint relating to liability are taken as true." *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (citation and internal quotation marks omitted). Once a default is entered, "[t]he defaulting party cannot contest the fact of his liability unless the entry of default is vacated under Rule 55(c)." *Id.* However, the Court still must determine the appropriate amount of damages, which must be pleaded and proved by the plaintiff in a motion for default judgment. *See id.* Before judgment can be entered, "[t]he plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011).

For the Court to vacate a default or a default judgment, the movant "must show good cause, quick action to respond to the default, and a meritorious defense to the underlying allegations." *Acosta v. DT & C Global Mgmt., LLC*, 874 F.3d 557, 560 (7th Cir. 2017); *see also* FED. R. CIV. P. 55(c) (providing that the Court can set aside a default for "good cause"). The same standards govern motions to vacate a default and a default judgment, but the standards are "more liberally applied" to a motion seeking to vacate a default. *Cracco v. Vitran Express, Inc.*,

559 F.3d 625, 631 (7th Cir. 2009) (citation omitted). Additionally, there is policy in federal court favoring trial on the merits over default judgment. *Id.* The decision to vacate a default is committed to the Court's sound discretion. *Id.* at 630.

## ANALYSIS

### I. Good Cause

Defendants must first show good cause for their failure to timely respond to the amended complaint. *Acosta*, 874 F.3d at 560. Good cause in this context "does not necessarily require a good excuse for the defendant's lapse." *JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 792 (7th Cir. 2015). In other words, "Rule 55(c) requires 'good cause' for the judicial action, not 'good cause' for the defendant's error[.]" *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007).

Defendants argue here that their failure to respond to the amended complaint was due to the lack of proper service. (R. 44, Defs.' Mot. at 2-5; *see also* R. 35, Ill. Att'y Gen.'s Resp. at 1-3.) Defendants are "entitled to an order vacating the default entered against them" if they "received insufficient service of process." *Strabala v. Zhang*, 318 F.R.D. 81, 89 (N.D. Ill. 2016); *see also Cunningham v. Montes*, 883 F.3d 688, 689-90 (7th Cir. 2018) (vacating entry of default where it was unclear whether plaintiff had complied with service requirements). That is because without proper service, the Court has no personal jurisdiction over a defendant. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). "When a district court enters a default judgment without personal jurisdiction over the defendant, the judgment is void, and it is a per se abuse of discretion to deny a motion to vacate that judgment." *be2 LLC v. Ivanov*, 642 F.3d 555, 557 (7th Cir. 2011)

5

(citation and internal quotation marks omitted); *see also Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 859 (7th Cir. 2016) ("A judgment is [ ] void as to any party who was not adequately served."). The Court must therefore consider whether service was proper.

Service in federal court is governed by Federal Rule of Civil Procedure 4. *See* FED. R. CIV. P. 4. Under that Rule, the plaintiff "is responsible for having the summons and complaint served within the time allowed by Rule 4(m)," which is 90 days unless the time is extended by the Court. FED. R. CIV. P. 4(b), (m). Under Rule 4(d), the plaintiff can mail a copy of the complaint and summons to the defendant and obtain a waiver of personal service. FED. R. CIV. P. 4(d). If the defendant does not waive service, process must be served in accordance with Rule 4(e). FED. R. CIV. P. 4(e). Rule 4(e) provides that service may be accomplished by delivering a copy of the summons and the complaint to the person individually; by leaving a copy of the complaint and summons at the defendant's "usual place of abode" with "someone of suitable age and discretion who resides there"; by delivering a copy of the complaint and summons to an agent "authorized by appointment or by law to receive such service of process"; or by following the service laws for the state in which the district court is located or where service is made. FED. R. CIV. P. 4(e)(1)-(2). Illinois service rules provide for personal service or by leaving a copy at the defendant's "usual place of abode" with someone 13 years or older. 735 ILL. COMP. STAT. 5/2-203(a).

Here, Plaintiff acknowledges that due to an "oversight," none of the Defendants were actually served under any of these methods. (R. 31, Pl.'s Mem. at 2 n.1 ("By oversight, no summons was served on any of the Defendants."); *see also* R. 42-1, Shoemaker Aff. ¶ 6 ("No summons was served with the amended complaint.").) Plaintiff nevertheless argues that service was proper because "counsel served copies of the complaint on the Illinois Attorney General by

6

mail and on the IDOC by electronic filing through the court's filing system." (R. 48, Pl.'s Resp. at 2.) In Plaintiff's view, "both IDOC and the Illinois Attorney General are appropriate agents of the several defendants to receive service of process" on their behalf. (R. 42, Pl.'s Reply at 3.) The Court disagrees.

As to the Illinois Attorney General, Plaintiff suggests that the Attorney General was acting as Defendants' counsel since the inception of this case, because all Defendants were employees of the State of Illinois at the time of the events underlying the suit. (R. 31, Pl.'s Mem. at 2.) In support, he cites the Illinois State Employee Indemnification Act, which provides in pertinent part: "In the event that any civil proceeding is commenced against any State employee arising out of any act or omission occurring within the scope of the employee's State employment, the Attorney General shall, upon timely and appropriate notice to him by such employee, appear on behalf of such employee and defend the action." 5 ILL. COMP. STAT. 350/2(a). However, no such notice occurred in this case at the time the amended complaint was filed, because none of the individual Defendants were actually served. (*See* R. 44-1, Martin Decl.; *id.*, Best Decl.; *id.*, R. Haven Decl.)

But more importantly, Plaintiff has not pointed to any statute or case law—and the Court has found none—providing that mailing a copy of a complaint to the Illinois Attorney General constitutes proper service on individuals employed by the State of Illinois. Nothing in Rule 4 authorizes service in this manner, nor is this a proper method of service under Illinois law. *See Cardenas*, 646 F.3d at 1005 ("Under Illinois law, serving an individual's employer or other putative agent is not sufficient for service on the individual."); *see also Fowler v. Heaton*, No. 88 C 4778, 1989 WL 112770, at *3 (N.D. Ill. Sept. 21, 1989) ("[T]he Attorney General's office was not authorized to accept service of process for an employee or former employee of the State of

7

Illinois[.]"). The mere fact that the Illinois Attorney General's office became aware of the suit at some point does not excuse Plaintiff from properly serving Defendants.[1] *U.S. v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008). ("[T]he service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint."); *McMasters v. United States*, 260 F.3d 814, 817 (7th Cir. 2001) ("[N]othing in the Federal Rules of Civil Procedure allows a judge to excuse service altogether. Actual notice to the defendant is insufficient; the plaintiff must comply with the directives of Rule 4."); *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 302 (7th Cir. 1991) ("[T]he extent to which the plaintiff 'tried' to serve process should not be a factor as to whether a federal court has personal jurisdiction over a defendant. Rather, the requirements of Rule 4 are satisfied only when the plaintiff is successful in serving the complaint and summons on the defendant."). Therefore, the Court is not persuaded by Plaintiff's argument.

Plaintiff also argues that service on IDOC through the Court's electronic filing system "should supply defendants with sufficient notice of the complaint." (R. 42, Pl.'s Reply at 5.) In support, Plaintiff cites to a portion of the IDOC's website, wherein it states that a "mission" of the IDOC's Chief Legal Counsel is to "coordinate legal representation with the Office of the

---

[1] To the extent Plaintiff is trying to argue that the Illinois Attorney General had "apparent authority" to accept service on behalf of the individual Defendants, this argument is unpersuasive. *See United States v. Norden Enters., LLC*, No. 01 C 8968, 2002 WL 1632633, at *2 (N.D. Ill. July 22, 2002) (requiring "that an agent have actual authority to receive service of process for that service to be valid," and noting that "Illinois courts . . . have concurred, requiring that for service to effectively made upon an agent of the defendant, the agent must have actual authority to accept process" (citations omitted)); *see also Annuity Plan of the Int'l Union of Operating Engineers Local No. 649 v. DEM/EX Grp., Inc.*, No. 08-1049, 2008 WL 4491951, at *2 (C.D. Ill. Oct. 2, 2008) ("The doctrine of apparent authority . . . has no applicability to the issue of service of process. Both Illinois and federal courts have consistently held that agency for purpose of service of process cannot be created by apparent authority."). Additionally, "apparent authority is created by words or acts of the alleged *principal*," not the words or acts of the agent. *New Process Steel, L.P. v. PH GR, Inc.*, 107 F. App'x 641, 643 (7th Cir. 2004) (citation omitted) (emphasis added). Here Plaintiff points only to the actions (or inaction) of the alleged agent—the Illinois Attorney General—in support of its apparent agency argument. (*See* R. 42, Pl.'s Reply at 2, 8-9.)

Attorney General[.]" *Chief Legal Counsel*, ILLINOIS.GOV,

https://www2.illinois.gov/idoc/aboutus/pages/chieflegalcounsel.aspx (last visited Mar. 22, 2018). Plaintiff argues that this language demonstrates some type of "implicit" relationship between the IDOC and its employees[2] which authorizes the IDOC to accept service on their behalf. (R. 42, Pl.'s Reply at 6.)

This argument misses the mark. "[I]f the defendant does not waive service and if no federal statute otherwise supplies a method for serving process, then Rule 4(e)'s list of methods is exclusive[.]" *Ligas*, 549 F.3d at 501. There is no indication that Defendants waived service, and Plaintiff has not pointed the Court to any applicable federal statute that "otherwise supplies a method for serving process." *Id.* Thus, Plaintiff was required to comply with the requirements of Rule 4. *See id.*; *McMasters*, 260 F.3d at 817. Nothing in Rule 4 authorizes service to be accomplished by electronically filing a copy of the complaint with the defendant's employer,[3] nor is this a proper method of service under Illinois law. *Cardenas*, 646 F.3d at 1005. Because there was no proper service, the Court must vacate the default. *be2 LLC*, 642 F.3d at 557. For the sake of completeness, the Court considers the other two factors.

## II. Quick Action

Defendants also must establish quick action by showing that they responded to the litigation in a timely manner. *Acosta*, 874 F.3d at 560. "What constitutes 'quick action' varies from case to case." *Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 861 (7th Cir. 2016). It is

---

[2] Plaintiff broadly asserts that "all Defendants are employees of the State of Illinois" without providing any documentation in support. (R. 31, Pl.'s Mem. at 2.) The events giving rise to this suit occurred nearly four years ago, and there is nothing in the record to show that all 13 individual Defendants (some of whom are yet to be identified) remain employed by the State of Illinois.

[3] Contrary to Plaintiff's argument, use of the Court's electronic filing system only achieves service pursuant to *Rule 5*, not Rule 4. *See* N.D. ILL. GEN. ORDER 09-014, Section X(C). Nothing in the Local Rules of this Court authorizes formal service of process to be accomplished simply by filing a document electronically, nor would such a rule be consistent with Rule 4.

9

true, as Plaintiff points out, that 17 months elapsed between the entry of default and the filing of Defendants' motion. But nothing actually happened during that period that would have alerted Defendants to the existence of the case. The Court entered a default in June 2016, but for unknown reasons, Plaintiff did not take any further steps to obtain a judgment until October 2017. (R. 20, Min. Entry; R. 30, Pl.'s Mot.) Once Defendants were made aware of the suit in October 2017, they took prompt action to vacate the default. (*See* R. 37, Ill. Att'y Gen.'s Mot.; R. 44 Defs.' Mot. at 1; R. 44-1, Best Decl.; *id.*, Martin Decl.) Therefore, the Court finds that the second requirement is satisfied. *See Cunningham*, 883 F.3d at 690 (reversing and remanding entry of default in part because the defendant "appeared in this litigation promptly after learning of its existence"); *Higgason v. Autterson*, 49 F. App'x 73, 74, 77 (7th Cir. 2002) (vacating denial of motion to vacate default judgment despite nearly three-year delay between entry of default and filing of motion, where the defendant was never properly served with the complaint).

### III. Meritorious Defense

Last, Defendants must establish that they have a meritorious defense to Plaintiff's claims. *Acosta*, 874 F.3d at 560. A meritorious defense in this context means "more than bare legal conclusions, but less than a definitive showing that the defense will prevail." *Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 505 (7th Cir. 2014) (internal citation omitted); *see also Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012) ("[A] meritorious defense need not, beyond a doubt, succeed in defeating a [default], but it must at least raise a serious question regarding the propriety of a [default]." (citation, internal quotation marks, and alteration omitted)).

In the amended complaint, Plaintiff raises a claim for failure to protect and two claims for denial of medical care, all of which are premised on the Eighth Amendment.[4] (R. 18, Am. Compl. ¶¶ 60-82.) The Eighth Amendment requires "that prison officials take reasonable measures to guarantee the safety of the inmates." *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010) (citation omitted.) This includes a duty to "protect prisoners from violence at the hands of other prisoners." *Id.* (citation omitted). However, because prisons are inherently dangerous places, a general risk of violence is not sufficient to prove an Eighth Amendment claim; instead, an inmate must show "either through direct or circumstantial evidence, that the defendants had actual knowledge that he was at serious risk of being harmed." *Tidwell v. Hicks*, 791 F.3d 704, 708 (7th Cir. 2015). The Eighth Amendment also imposes a duty on prison officials to provide prisoners with adequate medical care. *Haywood v. Hathaway*, 842 F.3d 1026, 1030-31 (7th Cir. 2016). To prevail on a claim for denial of medical care, a prisoner must establish both that he had a serious medical need and that prison officials were deliberately indifferent to that need. *Id.* at 1031; *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez*, 792 F.3d at 776. If defendants "don't know" about a problem or "can't do anything about it, the subjective component is not established[.]" *Del Raine v. Williford*, 32 F.3d 1024, 1038 (7th Cir. 1994).

Defendants assert that if given the opportunity, they will present evidence that Plaintiff did not suffer from a serious medical need, that they had no knowledge of Plaintiff's issues, and

---

[4] Plaintiff references both the Eighth and Fourteenth Amendments in his amended complaint. (*See* R. 18, Am. Compl. ¶¶ 75, 81.) It appears that Plaintiff was already convicted at the time these events occurred, in which case the Eighth Amendment would apply to his claims. *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009). If Plaintiff was in fact a pretrial detainee at the time of these events, the Fourteenth Amendment would govern his claims, but the standards governing Eighth and Fourteenth Amendment claims are functionally equivalent. *See id.*

"ultimately that their actions were not deliberately indifferent." (R. 44, Defs.' Mot. at 5.) Although their defenses could certainly be spelled out in greater detail, it can be gathered from their filings that they intend to attack the notice elements of both types of claims and to dispute that Plaintiff had a serious medical need. If meritorious, these defenses would defeat Plaintiff's claims. *See Haywood*, 842 F.3d at 1030-31; *Santiago*, 588 F.3d at 758. The Court finds that Defendants' allegations are not "so conclusory as to be fatal," particularly in light of the "lenient standards" for setting aside a default and the policy favoring resolution of a claim on the merits. *Cracco*, 559 F.3d at 631.

For all these reasons, the Court will vacate the entry of default. Because the entry of default is being vacated, and because proper service has never been effectuated on any Defendant, Plaintiff's motion for default judgment must be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to vacate the entry of default (R. 44) is GRANTED. The default entered on June 7, 2016, (R. 20) is VACATED. Plaintiff's motion for default judgment (R. 30) is DENIED. The parties shall appear for a status hearing on April 17, 2018, at 9:45 a.m., and they are directed to reconsider their respective settlement positions in light of this opinion and to exhaust all efforts to settle this case.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: March 28, 2018**